UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHAWNTA WATKINS,

    Plaintiff,

  v.

EQUIFAX INFORMATION
SERVICES LLC,

    Defendant.

Case No. 1:25-cv-524

JUDGE DOUGLAS R. COLE
Magistrate Judge Litkovitz

## OPINION AND ORDER

Defendant Equifax Information Services LLC moves to dismiss Plaintiff Shawnta Watkins' Complaint (Doc. 3). The Complaint alleges that Equifax—a credit reporting agency—violated the Fair Credit Reporting Act by failing to disclose complete account numbers for the various financial accounts noted in Watkins' consumer report file. Since Equifax filed its Motion to Dismiss (Doc. 4), Watkins has filed a Motion for Leave to File a Surreply in Further Opposition to Defendant's Motion to Dismiss (Doc. 7), and a "Motion for Detailed Written Ruling" (Doc. 8). For the reasons set forth below, the Court **DENIES** Watkins' Motion for Leave to File a Surreply (Doc. 7), **DENIES** Equifax's Motion to Dismiss (Doc. 4), and **DENIES** Watkins' Motion for Detailed Written Ruling (Doc. 8).

## BACKGROUND

Watkins filed this action in the Hamilton County Municipal Court on June 23, 2025. (*See* Doc. 3, #94). Equifax timely removed the case to this Court on July 28, 2025. (Doc. 1).

Equifax is allegedly a consumer reporting agency (CRA) as that term is used in 15 U.S.C. § 1681a(f). (Doc. 3, #75). That is, "for monetary fees, dues, and/or on a cooperative nonprofit basis, it regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." (*Id.* (citing 15 U.S.C. § 1681a(f))).

Watkins' Complaint alleges that Equifax violated the Fair Credit Reporting Act (FCRA). 15 U.S.C. § 1681 et seq. (*Id.* at #85–86). Specifically, Watkins contends that Equifax violated 15 U.S.C. § 1681g(a)(1)—an FCRA provision that requires CRAs to "clearly" and "accurately" disclose "[a]ll information in the consumer's file" when the consumer appropriately requests it. (*Id.* at #85). According to Watkins, Equifax failed to provide a full disclosure of her file because Equifax failed to include complete numbers associated with the various financial accounts noted in the disclosure. (*Id.* at #76–78). The apparent root of this mistake was Equifax's alleged use of an "automated system," which "extracts selected data from its internal databases and inserts that data into a standardized consumer disclosure template." (*Id.* at #80). This "template-driven process" is supposedly the "primary method" on which Equifax relies to satisfy its § 1681g disclosure obligations. (*Id.*). Watkins says "[t]hese disclosures routinely omit critical information such as full account numbers, complete payment histories, and other essential data fields," thus making it "impossible for consumers to identify the accounts being reported, verify the accuracy of the information, or determine whether the data reflects fraud, identity theft, error,

2

or legitimate activity." (*Id.*). As a result, Watkins claims she has endured "confusion, frustration, and anxiety over not knowing whether harmful or inaccurate information was being shared with creditors, insurers, or other decision-makers." (*Id.* at #82). So heavy is the weight of this ongoing distress that Watkins "has begun the process of seeking professional therapy to cope with … Equifax's failure to comply with its statutory duties." (*Id.*).

The FCRA supplies two private rights of action for plaintiffs in Watkins' situation: one for willful violations of the FCRA, 15 U.S.C. § 1681n, and one for negligent violations of the FCRA, *id.* § 1681o. Here, Watkins relies on both. (Doc. 3, #87). She claims that she is entitled to statutory damages, actual damages, and—because Equifax's conduct was "willful"—punitive damages. (*Id.*).

Equifax has now moved to dismiss. (Doc. 4). In its motion, Equifax contends that "[a]lthough credit 'file' for purposes of § 1681g means 'information included in a consumer report,'" a CRA need not disclose "every piece of information that a [CRA] has on a consumer." (*Id.* at #132). That's because the "FCRA defines the term 'consumer report' to mean 'any written, oral, or other communication of any information by a [CRA] *bearing on a consumer's credit worthiness*.'" (*Id.* at #133 (quoting 15 U.S.C. § 1681a(d)(1)(A) (emphasis in original))). On that ground, Equifax says that it was not bound to disclose the information that it allegedly omitted from Watkins' file. (*Id.* at #134).

Watkins has responded, (Doc. 5), and Equifax has replied, (Doc. 6), so the matter is ripe for review. But Watkins has also filed a Motion for Leave to File

3

Surreply in Further Opposition to Defendant's Motion to Dismiss (Doc. 7). So the Court first determines whether it will consider Watkins' surreply in ruling on Equifax's Motion to Dismiss.[1]

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id*.

"In reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in [her] favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021). But that does not mean the Court must take everything a plaintiff alleges at face value, no matter how unsupported. The Court may disregard "naked assertion[s]" of fact, "formulaic recitation[s] of the elements of a cause of action," and "mere conclusory statements." *Iqbal*, 556 U.S. at 678 (cleaned up). Additionally, the Court may grant a motion to

---

[1] In addition to seeking leave to file a surreply, Watkins has also filed a "Motion for Detailed Written Ruling" (Doc. 8), which "respectfully moves the Court to issue a written opinion setting forth the legal basis for any ruling on Defendant's Motion to Dismiss." (*Id*. at #172). In other words, Watkins has moved the Court to rule on Equifax's Motion to Dismiss. The Court **DENIES** Watkins' Motion for Detailed Written Ruling (Doc. 8) and does not consider any of the arguments Watkins advances therein, as doing so would amount to granting Watkins a form of surreply for which she has neither sought leave nor shown good cause.

dismiss "on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citations omitted).

## LAW AND ANALYSIS

**A.    The Court Does Not Consider Watkins' Surreply Because She Has Not Demonstrated Good Cause.**

Before turning to the merits of Equifax's Motion to Dismiss, the Court begins with a procedural issue—namely, whether the Court will consider Watkins' surreply. Although this Court's local rules generally do not permit parties to file surreply briefs, a party may request leave to do so upon a showing of good cause. S.D. Ohio Civ. R. 7.2(a)(2). As this Court has previously explained, generally, good cause "exists where the reply brief raises new grounds that were not included in the movant's initial motion." *Canter v. Alkermes Blue Care Preferred Provider Plan*, 593 F. Supp. 3d 737, 744 (S.D. Ohio 2022) (cleaned up) (citation omitted). Good cause also exists "where a party seeks to 'clarify misstatements' contained in the reply brief." *Id.* at 744–45.

Watkins identifies three grounds in support of her surreply. First, she says that Equifax's reply brief seeks, for the first time, "to reframe Plaintiff's statutory disclosure claim ... as a dispute over creditworthiness." (Doc. 7, #159). Second, Watkins says that Equifax raises a new argument "that Plaintiff's allegations fail for lack of binding authority, a contention that misstates the applicable pleading standard under Rule 12(b)(6)." (*Id.*). Finally, Watkins asserts that "Equifax attempts to mislead the Court by asserting that account numbers are not subject to disclosure, which is incorrect, and by suggesting that Plaintiff did not allege the omission of

5

account information from her consumer file disclosure." (*Id.*). Each of these arguments is meritless.

First, Watkins is wrong to assert that Equifax's reply brief "reframes" this dispute as one about creditworthiness. As the first page of Equifax's motion places beyond dispute, "creditworthiness" has been at the core of its argument from the get-go. (Doc. 4, #131).

Second, Equifax's assertion that Watkins "does not provide any binding authority rebutting the arguments raised in Equifax's Motion to Dismiss," (Doc. 6, #153), is not a "new argument[]" for dismissal, (Doc. 7, #158). Rebutting the authorities a party used in its response brief is an entirely proper use of a reply brief, and it does not warrant a surreply. *See, e.g., Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.*, 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) ("The Court finds that this argument is not a new argument but rather a counterpoint in response to Plaintiffs' theory of competitive standing. This is entirely consistent with the proper purpose of a reply brief, to address the opposing party's arguments raised in a response brief."). Moreover, Equifax's reply brief does not, as Watkins suggests, equate the Rule 12(b)(6) standard with a requirement that a plaintiff come forth with "binding authority" to survive a motion to dismiss. Equifax's point is merely that Watkins has identified no "binding authority rebutting the arguments raised in Equifax's Motion to Dismiss." (Doc. 6, #153).

Finally, Watkins cannot simply assert that Equifax is "incorrect" to argue that the various account numbers at issue here are not subject to disclosure—that's the

6

nub of the whole dispute. (Doc. 7, #159). Even if Watkins were correct, the merits of Equifax's argument is not a reason to grant leave for a surreply. And both parties have had the opportunity to brief the issue, so the Court declines to give Watkins a second bite at the briefing apple. Also, Equifax does not in any way suggest that Watkins failed to allege the omission of information from her consumer file. True, Equifax's motion notes that "Plaintiff does not allege that *no* account number information was included in the consumer report," but in the preceding sentence, it notes that the account numbers that *were* provided were "truncated." (Doc. 6, #155 (emphasis added)). In other words, Equifax is not arguing that Watkins failed to allege the omission of certain information from her file. Rather, consistent with Watkins' Complaint, Equifax is stating in its Reply that the account information provided was "truncated." (*Id.*).

In sum, Watkins has not shown good cause to consider her surreply. Accordingly, the Court **DENIES** Watkins' Motion for Leave to File a Surreply (Doc. 7).

B.  **Watkins' Complaint Adequately Alleges an FCRA Claim.**

Turn now to the merits of Equifax's Motion to Dismiss. As Watkins correctly points out, 15 U.S.C. § 1681g(a)(1) requires CRAs to "clearly" and "accurately" disclose a consumer file upon a proper request for that information. But whether any particular piece of information falls within the scope of that disclosure obligation turns on whether that information is a part of the "consumer's file." 15 U.S.C. § 1681g(a)(1). And here, it is Equifax's position that the term "consumer's file"

7

includes only information "bearing on a consumer's credit worthiness." (Doc. 4, #133). Accordingly, even accepting Watkins' factual allegations as true, Equifax says it was not bound to provide the allegedly omitted account-number information, as such information does not go to Watkins' creditworthiness. (*Id.* at #134). Watkins, on the other hand, points to a different FCRA definition—the one for the term "file"—and based on that definition she contends that Equifax's disclosure to her of truncated account numbers amounts to an FCRA violation. (Doc. 5, #143–44).

Ultimately, the Court agrees with Watkins' conclusion. But the Court gets there by a different route than the one she asks the Court to take. To see why the Court arrives at its conclusion, start from the statutory text. The FCRA requires CRAs to "clearly" and "accurately" disclose "[a]ll information in the consumer's file" upon an appropriate request. 18 U.S.C. § 1681g(a)(1). What, then, is the ambit of the term "file" in this provision? One could argue that the FCRA expressly answers that question. In a separate definitional section, the FCRA defines the term "file," "when used in connection with information on any consumer," to mean "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." 15 U.S.C. § 1681a(g). As Watkins recognizes, this broad understanding of the term supports her position. (Doc. 5, #143–44). Indeed, if it controls, then she wins this dispute.

But adopting a literal reading of the FCRA's definition of "file" in this context introduces a separate problem. As the Seventh Circuit noted in *Gillespie v. Trans Union Corp.*—a case Equifax cites in its briefing, (*see* Doc. 4, #132)—reading the word

8

"file" in § 1681g(a)(1) as broadly as the definition in § 1681a(g) suggests would render the other paragraphs in § 1681g(a) entirely superfluous. 482 F.3d 907, 909 (7th Cir. 2007). Those paragraphs require a CRA to disclose items such as "the name of each person that received a consumer report; the date, original payees, and amounts of any checks that form the basis of an adverse credit entry; and a record of all credit inquiries during the one-year period before the consumer's request." *Id.*; *see* 15 U.S.C. § 1681(g)(a)(1)–(6). But if "file" simply means *all* the information a CRA possesses on a given consumer, as § 1681a(g) suggests, then these additional paragraphs in § 1681g(a) are mere surplusage. Accordingly, the Seventh Circuit concluded that "file," *as used in § 1681g(a)*, instead "means information included in a consumer report." *Gillespie*, 482 U.S. at 910. So, on this reading, a plaintiff must show that a CRA "included similar information in a consumer report in the past or that it plans to do so in the future." *Id.* at 909.

The Court agrees with this interpretation of the statute and adopts it here. True, "[t]he canon against surplusage is not an absolute rule," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013), and "instances of surplusage are not unknown," *Arlington Cent. Sch. Dist. Bd of Educ. v. Murphy*, 548 U.S. 291, 299 n.1 (2006). But at the same time, "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx*, 568 U.S. at 386. So there's good reason to be dubious about reading "file" in § 1681g(a) as broadly as § 1681a(g) defines the term.

9

This reading of the statute also makes sense contextually in light of § 1681g's place in the statutory scheme. "The purpose of § 1681g … is to enable consumers to obtain information in order to dispute any potential inaccuracies in the file so that inaccurate information is not sent to third parties." *Selvam v. Experian Info. Sols., Inc.*, 651 F. App'x 29, 33 (2d Cir. 2016). Against that backdrop, it makes sense to read § 1681g as reaching any information that has gone (or might go) to third parties. But if, as in *Gillespie*, the information is for internal use only, *see* 482 F.3d at 908, the argument for liability stemming from nondisclosure is weak.

In sum, then, like a handful of other courts that have considered the question, the Court is satisfied that *Gillespie* got this issue of statutory interpretation right. *See Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018) ("A consumer's file includes 'all information on the consumer that is recorded and retained by a [CRA] that might be furnished, or has been furnished, in a consumer report on that consumer."); *Danehy v. Experian Info. Sols., Inc.*, No. 5:18-cv-17, 2018 WL 4623647, at *3 (E.D.N.C. Sep. 26, 2018) (same); *cf. Kelly v. RealPage Inc.*, 47 F.4th 202, 220 (3d Cir. 2022) ("[I]t is apparent that Congress used the terms 'consumer report' and 'file' interchangeably in § 1681g.").

But while the Court accepts this much of Equifax's argument, that's as far as the Court's agreement extends. Building on the premise that the word "file" in § 1681g(a) must bear a narrower meaning than the one § 1681a(g) provides, Equifax goes on to assert that a § 1681g(a) plaintiff may only sue over information that "bears on a consumer's creditworthiness." (Doc. 4, #133). And because Watkins' account

10

numbers do not fit that bill, Equifax says, the truncated account-number information is not actionable under the FCRA. (*Id.* at #133–34).

The Court understands the basis for Equifax's argument. The proposed focus on consumer creditworthiness derives from the FCRA's definition of the word "consumer report," which extends to "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character," etc., that could be used to establish the consumer's eligibility for (a) personal, family, or household credit or insurance, (b) employment purposes, or (c) any other purpose authorized by statute. 15 U.S.C. § 1681a(d)(1). So basically, Equifax takes *Gillespie*'s remark that "file" means "information included in a consumer report," 482 F.3d at 910, and then from that argues that § 1681g(a)'s use of the term "file" is strictly limited to information that meets the definition of "consumer report" laid out in § 1681a(d)(1).

The Court rejects this interpretive move.[2] As the Court reads the statute, the question is whether the CRA "included similar information in a consumer report in

---

[2] The cases that Equifax cites in support of its argument are inapposite. For example, take *Whitaker v. Trans Union Corp.*, No. 03-2551, 2005 WL 8160827 (D. Kan. Feb. 3, 2005). While it is true that the *Whitaker* court said that "scrambling or truncating a consumer's account number is a reasonable procedure to protect the consumer's information from potential identity theft," *id.* at *20, that was in part because the case involved *creditors* providing scrambled account number information, rather than CRAs making the decision to scramble the account numbers before producing the consumer's file, *see id.* ("The possibility of holding a [CRA] liable for reporting a scrambled or truncated account number that a creditor furnished would lead to absurd results, especially if the [CRA] did not know that the creditor furnished it with such an account number."). As other courts have since noted, that situation is different from one in which a plaintiff alleges that the *CRA itself* has reported inaccurate or incomplete account numbers. *See Washington v. Equifax*, No. 3:19-cv-154, 2019 WL 2443126, *2 (M.D. Tenn. June 12, 2019) (holding that a § 1681g(a) plaintiff stated a claim for inaccurate account number information and rejecting *Whitaker* as a basis for dismissal). Other cases, such as *Walker v. Equifax Information Solutions, LLC*, are about purported

11

the past or … plans to do so in the future." *Id.* at 909. That's a factual question—what did Equifax actually do?—that the Court cannot resolve based on statutory definitions. Indeed, the "factual record" at the motion to dismiss stage consists of the well pleaded facts, and here Watkins has, in fact, alleged that Equifax includes complete account numbers in its consumer reports to third parties. (*See* Doc. 3, #78 ("Upon information and belief, when Equifax produces and sells consumer reports about Ms. Watkins to third parties, it includes the full account numbers associated with the accounts in question.")). So Watkins has stated a plausible claim for an FCRA violation. If that allegation is not accurate—if in fact Equifax does not include the complete account numbers in reports it provides to third parties—this may be a short-lived case. But that is question for summary judgment, not dismissal.

In sum, the Court holds that Watkins' Complaint adequately alleges a violation of the FCRA and therefore **DENIES** Equifax's Motion to Dismiss (Doc. 4).

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Watkins' Motion for Leave to File Surreply in Further Opposition to Defendant's Motion to Dismiss (Doc. 7),

---

violations of other provisions in the FCRA. *See* No. 1:21-cv-1045, 2024 WL 4815355, at *7 (N.D. Ga. Sep. 23, 2024). True, at least one of the cases Equifax cites grants a motion to dismiss a § 1681g claim. *See Wimberly v. Experian Info. Sols., Inc.*, No. 18-cv-6058, 2019 WL 6895751, at *9 (S.D.N.Y. Dec. 18, 2019). But like *Gillespie*, the *Wimberly* court dismissed the claim because the pieces of information at issue were "internal records" that CRAs use to "investigate consumer disputes." *Id.* at *7, 9. The case is therefore distinguishable under the reading of the statute the Court adopts here because Watkins has alleged that the account numbers at issue are information that Equifax sends to third parties.

**DENIES** Equifax's Motion to Dismiss Plaintiff's Complaint (Doc. 4), and **DENIES** Watkins' Motion for Detailed Written Ruling (Doc. 8).

    **SO ORDERED.**

December 30, 2025
**DATE**

           **DOUGLAS R. COLE**
           **UNITED STATES DISTRICT JUDGE**